IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DONNA M.,[1]<br><br>    Plaintiff,<br><br>  v.<br><br>MARTIN O'MALLEY,[2] Commissioner of Social Security,<br><br>    Defendant. | Civil No. 23-cv-1760 (RMB)<br><br>OPINION |

**APPEARANCES**

Jennifer L. Stonage
Bross & Frankel, P.A.
725 Kenilworth Ave
Cherry Hill, New Jersey 08002

   *On behalf of Plaintiff*

Heather Benderson
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235

   *On behalf of Defendant*

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts should refer to plaintiffs in social security disability cases by only their first names and last initials given the significant privacy concerns in these matters. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. By Federal Rule Civil Procedure 25(d), the Court substitutes Martin O'Malley for Kilolo Kijakazi as Defendant.

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiff Donna M. asks this Court to overturn the Commissioner of Social Security's (Commissioner) denial of her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 *et seq*.  Donna contends substantial evidence does not support the Administrative Law Judge's (ALJ) finding that she is not disabled under the Act.  She argues, among other things, the ALJ's failure to consider her Raynaud's syndrome renders the judge's disability determination defective.  Despite the ALJ's thorough opinion, the Court is constrained to remand this matter for further administrative proceedings.  The ALJ never classified Donna's claimed Raynaud's as a medically determinable impairment, and that failure undermines the judge's Residual Functional Capacity (RFC) determination.  So the Court **VACATES** the Commissioner's denial of Donna's DIB, and **REMANDS** the matter for the ALJ to determine whether Donna's claimed Raynaud's qualifies as a medically determinable impairment.

## I. LEGAL STANDARDS

### A. Standard of Review

The Act grants federal courts limited power to review the Commissioner's decision to deny an applicant DIB.  42 U.S.C. § 405(g).  While courts conduct a plenary review of all legal issues the Commissioner decides, *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000), the Act requires courts to uphold the Commissioner's factual decisions if supported by "substantial evidence," *see* 42 U.S.C. § 405(g).  *See also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  This evidentiary threshold is "not high" and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019)  (internal quotation marks omitted)

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The substantial evidence standard is a deferential one, and a court cannot set aside the Commissioner's decision merely because "acting de novo [it] might have reached a different conclusion."  *See Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986).  Indeed, courts cannot "weigh the evidence or substitute [its own] conclusions for those of the [Commissioner.]"  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (first alteration in original, internal quotation marks and citation omitted).

      Still, while deferential, the substantial evidence inquiry is not a perfunctory exercise to rubberstamp the Commissioner's decision.  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining the substantial evidence standard is not "a talismanic or self-executing formula for adjudication," rather, the standard requires a "qualitative exercise").  Thus, when reviewing the Commissioner's decision, courts must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (internal quotation marks and citation omitted).

      Where, as here, the Appeals Council denies a claimant's request for a review of an ALJ's decision, the "ALJ's decision is the Commissioner's final decision."  *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  The ALJ's decision must have enough information to "permit meaningful judicial review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  This requires the ALJ to explain what evidence the judge considered that "supports the result" and "some indication of the evidence [the judge] rejected."  *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 111 (3d Cir. 2006) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).  Otherwise, courts "cannot tell if significant probative evidence was not credited or simply

ignored." *Cotter*, 642 F.2d at 705. Courts will set aside an ALJ's decision if the judge failed to consider the entire record or resolve an evidentiary conflict. *Fargnoli v. Massanari*, 247 F.3d 34, 41-42 (3d Cir. 2001).

### B. The Social Security Disability Determination

To qualify for DIB, a claimant must show she is disabled. 42 U.S.C. § 423. "Under the [Act,] a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli*, 247 F.3d at 38-39 (internal quotation marks and citation omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner makes a disability determination through a five-step sequential process. 20 C.F.R. § 404.1520(a)(4). For steps one through four, the claimant bears the burden of proof. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). At the fifth step, the Commissioner shoulders the burden. *Id.* The five-steps are:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If [she] is, [she] is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental

> ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, [she] is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If [she] has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, [she] is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether [she] can perform [her] "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [she] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If [she] cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering [her] "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, [she] is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If [she] cannot, [she] is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

## II. BACKGROUND

### A. Donna's Application for DIB, the Commissioner's Decision, and the Administrative Hearing

Donna applied for DIB under the Act alleging a disability onset date of September 30, 2019. [Administrative Record (AR) 55-59.] She claimed a host of conditions or impairments caused her disability, such as back pain, arthritis in back, osteoarthritis in right arm, hand, and wrist, asthma, left knee aches, and "Reynolds diseases in feet." [*Id.*] The Commissioner

5

denied her initial application and her request to reconsider the denial. [AR55-64.] In reaching those decisions, the Commissioner found Donna not disabled under the Act, and noted the lack of medical evidence to support her disability claim. [*Id.*]

Donna then requested a hearing before the ALJ where she testified. [AR33-54.] While Donna claimed a disability onset date in 2019, she stopped working in any capacity at "[t]he end of 2014." [AR37-38.] She was self-employed, owning and operating a janitorial service for commercial and residential properties. [AR39-40; AR42.] Donna not only "ran the business," she also performed the day-to-day activities like "dusting, vacuuming, cleaning bathrooms," "flip[ing] mattresses, mak[ing] beds," and other activities for her business. [*Id.*]

According to Donna, she was diagnosed with "Raynaud's syndrome some time ago" that causes her hands and feet to cramp, which feels "like pins and needles." [AR43.] With her feet, Donna explained her Raynaud's syndrome causes her feet to cramp to a point where she "had to straighten them out." [*Id.*] The Raynaud's also causes her hands to "start cramping to a point where [she has] to put [her] hand out on a flat surface to get them to stop cramping." [AR44.] Donna explained the weather and certain daily activities that require her to use her hands repetitively contributes to the cramping. [AR43-44.]

On top of the Raynaud's in her hands and feet, Donna explained she suffers from "pigeon toes" in both feet and arthritis in the thumb. [AR34, AR44.] She added her Raynaud's in her feet and pigeon toes limit her ability to stand for more than thirty minutes, and require her to "sit and rest for . . . five, ten minutes." [AR43-44.] Those ailments also limit her ability to walk to about twenty minutes before stopping to sit down. [AR44.] For the hands, Donna explained the cramping causes her difficulty to hold a vacuum cleaner or use a hair dryer. [AR45-46.]

6

Besides her foot and hand problems, Donna added she has osteoarthritis in her shoulder dating to 2019. [AR46.] The shoulder pain causes her to lose sleep, and she has difficulty "reach[ing] up in the cabinet." [*Id.*] She explained the shoulder pain and other physical conditions limit her ability to perform daily chores, like the laundry. [AR46-47.] Donna also noted her "spine starts hurting" if she sits down for too long. [AR47.]

**B. The ALJ's Decision, the Appeals Council's Decision, and the Pending Appeal**

The ALJ found Donna was not disabled under the Act at any time through her last insured date. [AR28.] The judge found Donna could work "at a medium exertional level." [AR26.] The ALJ added that Donna "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." [AR28.]

At step one of the five-step sequential analysis, the ALJ found Donna had not engaged in "substantial gainful activity" since her alleged onset date of September 30, 2019. [AR17.] At step two, the ALJ found Donna had three severe impairments: (1) hallux valgus of the left foot, commonly known as bunions; (2) osteoarthritis of the left foot; and (3) osteoarthritis of the shoulders. [*Id.*] The ALJ, however, found Donna's other conditions she claimed disabled her—hypertension, gastroesophageal disease (GERD), low back pain, wrist pain, asthma, obesity, trochanteric bursitis of the left hip, and degenerative joint disease of the left thumb— were non-severe. [AR18.]

For her hypertension, the ALJ found the condition non-severe because Donna's medical records reveal she controlled the condition with medication. [*Id.*] Likewise, the ALJ found Donna's GERD non-severe because "her medications managed her symptoms." [*Id.*] Onto her claimed lower back pain, the ALJ noted that Donna had been involved in a car accident in 2021—about two years after her last insured date. [*Id.*] Based on available

medical record evidence, the ALJ found that Donna received some medication for her lower back pain, but did not receive any medical treatment relating to her lower back after the accident. [*Id.*] The judge added that imaging of Donna's lower back revealed "degenerative joint disease." [*Id.*] Even so, the ALJ found Donna's lower back pain non-severe based on the lack of treatment records following the accident. [*Id.*]

Onto her wrist pain, the ALJ found it non-severe based on medical records closer to her last insured date. [AR19.] The judge explained Donna complained to her medical provider about her wrist pain in November 2020, but "rated her pain at 2 out of 10." [*Id.*] The ALJ also found the medical evidence suggested Donna's wrist pain's "intensity was mild" in 2020, and imaging "revealed no significant findings in the wrist." [*Id.*] For her asthma, the ALJ noted Donna had a history of asthma, but the "impairment is well controlled by her medication and the severity of her asthma has reduced from moderate to mild over time." [*Id.*] So the ALJ found her asthma to be non-severe. [*Id.*] Turning to her obesity, the ALJ found it too non-severe because no evidence revealed "her obesity impacts her physical functioning negatively." [*Id.*] Nor did her obesity "enhance any of her non-severe or severe impairments." [*Id.*]

Turning to her trochanteric bursitis of the left hip, the ALJ found Donna started complaining about hip pain almost two years after her last insured date. [AR20.] In any event, the ALJ noted Donna received an injection in the hip and never sought more treatment for her pain. [*Id.*] So the ALJ found her left hip problems to be non-severe. [*Id.*] For the degenerative joint disease of her left thumb, the ALJ found this impairment non-severe because Donna responded well to treatment and treatment "reduced her functional deficits." [AR20-AR21.]

But the ALJ never discussed Donna's Raynaud's syndrome at step two. Despite Donna listing Raynaud's syndrome as a reason she claimed disability, and testified about the condition and its effects on her, the ALJ never mentioned it when discussing Donna's other impairments.

At step three, the ALJ determined that none of Donna's impairments met or equaled the severity of impairments listed in the regulations. [AR21-AR22.] In doing so, the ALJ considered Listing 1.18 (abnormality of a major joint(s) in any extremity), but found she did not qualify under that listing for either her right shoulder impairment or left hand arthritis. [AR22.] The ALJ explained that Donna does not need an ambulation aide for her shoulder, and she failed to show "that she cannot initiate[,] sustain[,] and complete work-related activities involving fine and gross movements." [AR22.] Turning to her left hand, the ALJ noted that Donna's grip strength of 42 pounds in 2020 would be enough "to perform fine and gross movements even in 2019." [*Id.*]

At step four, the ALJ found Donna had the RFC "to perform work at a medium exertional level." [AR26.] After reviewing Donna's testimony, third-party opinion evidence, and Donna's medical records on her left foot bunions, osteoarthritis of the left foot, and osteoarthritis of the shoulders, the ALJ concluded "a number of [Donna's] impairments cause some symptomatology." [AR25.] But given the medical evidence, the ALJ found Donna's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." [AR23.]

A sticking point for the ALJ was Donna's failure to produce medical records from 2019—the year of her last insured date. [AR23-AR25.] Thus, the ALJ relied on medical records from 2020 through 2021.

9

For her shoulders, the ALJ noted the medical records from 2020 showed Donna received a steroid injection in early November 2020. [AR23.] About two weeks after that injection, Donna's medical records show that she rated her shoulder pain "at 2 out of 10," and declined another injection and any medications, which, suggested to the ALJ, the "injection had provided good pain relief." [AR25.] Later medical records from 2021 revealed that while Donna experienced pain in the shoulders, "she had full strength in the right upper extremity but had a reduced range of motion in the extremity, compared to a mildly reduced range in November 2020." [*Id.*] Accordingly, the ALJ found that, given her pain level in 2020, Donna experienced some shoulder pain in 2019, but had "full strength in the extremity and only tenderness and a marginally reduced range of motion." [*Id.*]

Turning to her feet, the ALJ concluded medical records from 2021 revealed that foot "strapping" and orthotics provided Donna some relief. [AR23.] The judge also found that Donna declined surgery, choosing a conservative treatment. [*Id.*] Based on the medical evidence, the ALJ found that Donna likely experienced foot pain in 2019, but given the lack of medical records to quantify that pain, the ALJ found Donna could perform work at a medium exertional level. [AR24 to AR25.]

When formulating Donna's RFC, the ALJ never mentioned Donna's Raynaud's syndrome. The judge, however, did summarize Donna's testimony on her hand and feet cramping. [AR22-AR23.]

Donna appealed the ALJ's decision to the Appeals Council. [AR1.] The Council declined Donna's appeal. [*Id.*] She then filed this lawsuit seeking to overturn the Commissioner's decision. [Docket No. 1.]

### III. PARTIES' ARGUMENTS

#### A. Donna's Arguments

Donna asks this Court to overturn the Commissioner's decision because substantial credible evidence does not support the ALJ's findings since the judge: (1) included no limitations caused by her severe medically determinable impairments in the RFC determination; (2) erred at step two by not classifying her Raynaud's syndrome as a medically determinable impairment, or misclassifying the syndrome as arthritis at step four; and (3) overlooked medical evidence at step two concerning her lower back pain when classifying it as non-severe. [Pl.'s Br. at 14-24 (Docket No. 4).]

Donna first contends the ALJ did not adequately consider the medical records from 2020 through 2021 showing she suffered from degenerative diseases, had limited range of motion, and injections provided her minimal relief. [*Id.* at 17.] Donna also faults the ALJ for overlooking medical records before her last insured date that demonstrates she has arthritis, and that she sought treatment for foot pain. [*Id.* at 18.] And pointing to the Third Circuit's decision in *Newell v. Commissioner of Social Security*, 347 F.3d 541 (3d Cir. 2000), Donna argues the lack of contemporaneous records from the last insured date are not required since courts are allowed to conduct a "retrospective diagnosis of an impairment." [*Id.* at 15, 18.] According to Donna, the ALJ had a "substantial amount of non-contemporaneous and vital contemporaneous evidence to allow [the judge] to consider further limitations [in her RFC,]" but "the ALJ failed to properly consider that evidence, and . . . did not offer a substantial explanation as to why contemporaneous evidence was omitted from [the judge's] consideration." [*Id.* at 18.] Donna also argues the ALJ did not adequately explain why the

11

judge rejected the third-party lay opinion evidence, which, according to Donna, highlights the limitations caused by her severe medically determinable impairments. [*Id.* at 16.]

Turning to her Raynaud's, Donna argues the ALJ never considered the condition at any step. [*Id.* at 21-23.] Donna points out that the medical records show historical diagnoses of Raynaud's, but the ALJ never analyzed the condition. [*Id.* at 22.] Given the ALJ's silence on Donna's Raynaud's, Donna contends this Court cannot conduct a meaningful review because the Court does not know if the ALJ intentionally overlooked the impairment, "or just missed it all together." [*Id.* at 23.] And Donna faults the ALJ for mislabeling her hand and feet cramping as arthritis instead of Raynaud's. [*Id.* at 22.]

For her lower back pain, Donna contends the ALJ narrowly focused on the back pain she experienced in 2021 from a car accident. [*Id.* at 23-24.] Pointing to the medical record, Donna argues she complained of lower back pain years before the accident, but the ALJ failed to consider that evidence when characterizing her back pain as non-severe. [*Id.* at 24.]

**B.  The Commissioner's Arguments**

The Commissioner contends substantial credible evidence supports the ALJ's finding that Donna had the RFC to perform work at a medium exertional level. [Def.'s Br. at 9-12 (Docket No. 5).] The Commissioner argues Donna provided no contemporaneous medical records to support the limitations beyond medium exertion. [*Id.* at 9.] Pointing to the medical evidence, the Commissioner argues that Donna's medical records closer to her last insured date showed Donna responded well to treatment, had only a reduced range of motion, and did not reveal her reporting severe pain. [*Id.* at 10.] For example, looking to her November 2020 treatment records, the Commissioner explains Donna reported pain at "2 out of 10," in her shoulders, and after receiving an injection, reported no pain. [*Id.*] Given the medical

evidence, the Commissioner argues the ALJ found Donna's impairments could have caused her pain or limited her ability to work before her last insured date, but explains the medical records do not support her claims on the intensity, persistence, and limiting effects of her impairments. [*Id.* at 9-10.] Thus, the Commissioner argues the ALJ properly found Donna had the RFC to perform work at a medium exertional level. [*Id.* at 12.]

Turning to Donna's Raynaud's, the Commissioner contends Donna offered no evidence that her medical providers found Raynaud's "to be a current diagnosis." [*Id.* at 13.] The Commissioner points to Donna's medical records showing the condition listed as a historic diagnosis. [*Id.*] And the Commissioner asserts that none of Donna's medical providers attributed her hand and feet cramping to Raynaud's. [*Id.*] In any event, the Commissioner contends the ALJ's failure to consider Donna's Raynaud's at step two is a harmless error because the judge continued to the remaining steps. [*Id.*] Pointing to the ALJ's decision, the Commissioner asserts the judge considered Donna's testimony on her hand and feet cramping in the RFC determination. [*Id.*] Thus, the ALJ's silence on Donna's Raynaud's does not require reversal. [*Id.*]

Finally, the Commissioner argues Donna has presented no medical evidence contradicting the ALJ's finding that her lower back pain qualified as a non-severe medical impairment. [*Id.* at 13-14.] The Commissioner points to several records showing Donna never complained to her medical care providers after May 2015 about her alleged back pain. [*Id.*] The Commissioner also contends that following her car accident, Donna sought no other medical treatment for her back. [*Id.*] Accordingly, the ALJ properly characterized Donna's lower back pain as a non-severe medical impairment. [*Id.*]

13

## IV. DISCUSSION

Having reviewed the ALJ's decision, the parties' arguments, and the administrative record, this Court is constrained to reverse the ALJ and remand for further administrative proceedings. Based on the record, the Court cannot tell if the ALJ considered Donna's Raynaud's syndrome. The ALJ never classified her Raynaud's as a medical determinable impairment at step two, and the judge may have conflated her Raynaud's and arthritis in the RFC determination. Because the Court cannot tell if the ALJ overlooked or intentionally disregarded evidence of Donna's Raynaud's, and given the ALJ's silence on it, the Court remands.

Normally, when an ALJ finds at least one severe medical impairment at step two and continues onto the other steps, the ALJ's failure to consider other medically determinable impairments or find that a particular impairment to be non-severe is a harmless error. *Jennifer V. v. Comm'r of Soc. Sec.,* 2022 WL 1044966, at *4 (D.N.J. Apr. 7, 2022); *see also Salles v. Comm'r of Soc. Sec.,* 229 F. App'x 140, 145 n. 2 (3d Cir. 2007) ("Because the ALJ found in [plaintiff's] favor at [s]tep [t]wo, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."). This is because the step two inquiry is a "screening device" designed "to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 546 (3d Cir. 2003).

But that error is harmless only if the ALJ considers the "missing medically determinable impairment in the RFC assessment and it would not otherwise affect the outcome of the case." *Friday v. Comm'r of Soc. Sec.*, 2021 WL 3879081, at *4 (D.N.J. Aug. 31, 2021). Indeed, ALJs must consider all the claimant's medically determinable impairments, severe or not, in combination in the RFC assessment. 20 C.F.R. § 404.1545(a)(2) ("We will

consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); *see also James M. v. Comm'r of Soc. Sec.*, 2022 WL 3152638, at *5 (D.N.J. Aug. 8. 2022) ("The ALJ has a duty to consider all medically determinable impairments that a claimant is able to establish prior to his last date insured.")

The harmless error rule the Commissioner clings to here does not apply if the ALJ failed to find a condition at step two a medically determinable impairment, or failed to give any reasoning as to why the condition is not a medically determinable impairment. *Vazquez-Rivera v. Kijakazi*, 2022 WL 4486403, at *7 (M.D. Pa. Sept. 27, 2022) (collecting cases); *see also Penny Lou S. v. Comm'r of Soc. Sec.*, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019) ("[T]he step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable."). This is so because ALJs need only consider medically determinable impairments, severe or not, in the RFC determination. 20 C.F.R. § 404.1545(a)(2). ALJs need not consider a condition or illness the judge finds to be a non-medically determinable impairment. *Negron v. Comm'r of Soc. Sec.,* 2023 WL 5943148, at *6 (M.D. Pa. Sept. 12, 2023) ("Unlike a non-severe impairment, a non-medically determinable impairment is *not* considered in assessing the claimant's RFC." (emphasis in original)); *see also Switzer v. Comm'r of Soc. Sec.,* 2019 WL 5485526, at *6 (D.N.J. Oct. 24, 2019) (ruling ALJ did not err by not including claimant's fibromyalgia and depression in RFC determination because substantial evidence supported the ALJ's finding that those conditions "were not medically determinable impairments"). Thus, a failure to identify a condition as a medically determinable impairment at step two

15

"renders the ALJ's RFC determination at step four defective." *Casiano v. Colvin*, 2014 WL 6633109, at *14 (M.D. Pa. Nov. 21, 2014).

Here, Donna applied for DIB claiming, among other things, her Raynaud's disabled her. [AR55-59.] "Raynaud's is a rare disorder that effects the arteries, and it is marked by brief episodes of narrowing of the blood vessels (known as vasospasms). There are two types of Raynaud's: primary Raynaud's (also called Raynaud's disease), where the cause of symptoms is unknown, and secondary Raynaud's (also called Raynaud's phenomenon), where the symptoms are caused by an underlying disease, condition, or other factor." *Kurtz-Porter v. Kij*, 2021 WL 4551614, at *4 (N.D. Ind. Oct. 5, 2021) (citations omitted). "Raynaud's phenomenon . . is often a more serious disorder than Raynaud's disease." *Id.* (citation and internal quotation marks omitted). "Raynaud's can be triggered by both cold and stress, and even mild or brief temperature changes, such as taking something out of the freezer, washing your hands in cold water, or being exposed to temperatures below 60 degrees Fahrenheit, can trigger a Raynaud's attack." *Id.*

At the hearing, Donna testified about being "diagnosed with Raynaud's syndrome some time ago." [AR43.] And she detailed how her Raynaud's affects her hands and feet, like cramping and the feeling of "pins and needles." [AR43-AR45.] She also described how cold temperatures exacerbate the hand cramping. [AR44 ("Especially in the cold, they start cramping up to where I have to put my hand out on a flat surface to get them to stop cramping.").] In addition, Donna's medical records list Raynaud's in her past medical history. [AR370, AR397.]

Even though Donna listed Raynaud's in her DIB application, testified about it, and her medical records listed Raynaud's in her past medical history, the ALJ never discussed

16

Raynaud's at step two. The ALJ has a duty to determine whether Donna's claimed Raynaud's constitutes a medically determinable impairment, and if so, the condition's severity. *See James M.*, 2022 WL 3152638, at *5; *see also* 20 C.F.R. § 404.1521. For a condition to qualify as a medically determinable impairment, the condition "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The Commissioner (and the ALJ) cannot rely on a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.* While Donna's statements about her Raynaud's and the history of Raynaud's mentioned in her medical records may not be enough for her Raynaud's to qualify as a medically determinable impairment, *see id.*, the ALJ had access to test results from Donna's bloodwork. [AR556, AR570.] Both tests show Donna's "Rheumatoid Arthritis Factor" to be high. [AR556 (December 2016 test results), AR570 (April 2016 results).] The ALJ never discussed this bloodwork at any step.

Up top, the Court observed that Raynaud's phenomenon is a more serious disorder than Raynaud's syndrome, and Raynaud's phenomenon's symptoms "are caused by an underlying disease, condition, or other factor." *Kij*, 2021 WL 4551614, at *4. Some medical scholars, who have studied Raynaud's phenomenon, have found a link between rheumatoid arthritis and Raynaud's phenomenon. *See generally* Peter Hartmann *et al.*, *The Association of Raynaud's Syndrome with Rheumatoid Arthritis—a Meta-Analysis*, 30 Clinical Rheumatology 1013, 1018 (2011) (concluding authors' "meta-analysis supports the current evidence that there is a possible indication of an association between [Raynaud's syndrome] and patients with [rheumatoid arthritis]"); *see also* 8 Att'ys Med. Advisor § 87.45 (current through Mar.

17

2024) (noting "Raynaud's phenomenon may be associated" with, among other things, "rheumatoid arthritis").  Thus, given the available medical records, coupled with Donna's testimony, the ALJ erred at step two by not making any finding on whether Donna's claimed Raynaud's is a medically determinable impairment.  *James M.*, 2022 WL 3152638, at *5 (reversing ALJ's decision and ordering remand where "the ALJ failed to even mention several conditions that were present in Plaintiff's medical records," and so, "[r]emand is appropriate here for the ALJ to first to determine if these are medically determinable impairments and if so whether or not they are severe").  This error is not harmless and undermines the ALJ's RFC determination.  *Id.*; *see also Negron,* 2023 WL 5943148, at *6 (ordering remand because ALJ offered no explanation on why judge found claimant's leg impairment "was not a medically determinable impairment" where claimant's medical records revealed diagnosis of leg impairment and claimant filed for DIB "due to 'pins and rod' in her leg").

      Moreover, while the ALJ reviewed Donna's testimony about her hand and feet cramping, the judge associated that cramping with "arthritis."  [AR22-AR23.]  In doing so, the ALJ mischaracterized Donna's testimony, and so likely conflated Donna's Raynaud's with her arthritis.  Indeed, Donna testified that her Raynaud's caused the hand and feet cramping.  [AR43-AR45.]  She also testified that on top of her Raynaud's, she has arthritis in her left thumb.  [AR45.]  Accordingly, this Court cannot tell whether the ALJ properly considered any limitations caused by her claimed Raynaud's in the RFC determination.  *See Negron,* 2023 WL 5943148, at *5-6 (finding ALJ's failure to identify leg impairment as a medically determinable impairment at step two not harmless error even though judge discussed claimant's leg pain in RFC determination).

In the end, the Court cannot say substantial evidence supports the ALJ's decision. To be sure, on remand, the ALJ may very well find Donna's claimed Raynaud's is not a medically determinable impairment. Yet that is a call the ALJ must make. 20 C.F.R. § 404.1521. Given the ALJ's failure to address Donna's claimed Raynaud's at step two, the Court cannot address her remaining arguments about the ALJ's RFC determination. *See James M.*, 2022 WL 3152638, at *5. The step two error here "renders the ALJ's RFC determination at step four defective." *Casiano*, 2014 WL 6633109, at *14. Thus, the Court remands the matter for the ALJ to determine whether Donna's claimed Raynaud's is a medically determinable impairment.

## V.  CONCLUSION

For the above reasons, the Court **VACATES** the Commissioner's denial of Donna's application for DIB and **REMANDS** this matter to the ALJ for further administrative proceedings consistent with this Opinion.

An accompanying Order as of today's date shall issue.

                                            **s/Renée Marie Bumb**
                                            RENÉE MARIE BUMB
                                            Chief United States District Judge

Dated: May 13, 2024